This case on the docket, please, 16-0027, the people of the state of Illinois, President Atlin and David Kimble, Mr. Fenton, are going on behalf of the Defense Department, Ms. Rosette and Ms. Skellig, are going on behalf of the President's Committee, Ms. Eileen Diaz. Ms. Skellig. Good afternoon, Your Honors, Counsel. Good afternoon. May it please the Court, Josette Skellig appearing today on behalf of the Office of the State Appellate Defender for David Kimble. Mr. Kimble is appealing from an order and... Somebody known as the fugitive plaintiff. I knew you were going to say that. I think it may be spelled the same way, actually. But no, he doesn't know anyone on people, I don't believe. Mr. Kimble is appealing from an order entered by the trial court denying his motion to bar re-prosecution on double jeopardy grounds. This is a case where the trial judge, on her own motion, declared a mistrial after the jury had been deliberating less than five hours, and after a jury trial that lasted, with the presentation of evidence and argument, two and a half days, and after the jury delivered a note declaring that they were at an impasse. Before a mistrial can be declared without violating a defendant's right against double jeopardy, there has to be a manifest necessity for such a mistrial. In this case, when the judge got the juror's note, both the state and defense counsel asked for two things. They asked that the jury be given a prim instruction, and they asked that the jury be told to go home and return the next morning to restart deliberating again. In fact, defense counsel told the judge that these were the only two viable options. By saying that, defense counsel was clearly asserting his client's right to proceed to a verdict with this jury that had been selected. Did we have to object, however, specifically when the judge declared the mistrial on double jeopardy grounds? No. Escobar, the first district in Escobar, did make that statement that it's not enough for the defendant to say, I think there should be a prim instruction. The defense in Escobar, the first district, said the defense also has to say, by the way, I'm objecting on double jeopardy grounds. This court in Bagley itself recognized what you have to do, your obligation to protect your double jeopardy rights, is to tell the judge that you want to proceed to a verdict with this jury. And the Seventh Circuit in Escobar looked at the same issue in that very case, and they said, the trial judge knows what the law is. The trial judge knows that if he or she is going to declare a mistrial based on jury deadlock, that that's going to implicate double jeopardy issues. So as long as he didn't, he certainly didn't ask for a mistrial, he never consented, the prosecutor may have consented, the defense attorney never did. He stuck with his desire to proceed to a verdict with this jury. And there was no implicit consent? No. No, there was not. In fact, in Bagley, the defense attorney in that case had said, that involved a situation where a video of the defendant's DUI arrest surfaced right after the trial had started. And defense counsel had said in that case, you know, I think this is deserving of a mistrial, but we want to continue with this jury. Certainly, when you're talking about a defendant's right to proceed through the trial to a verdict, you can't foreclose that right until there is actually manifest necessity. And what do we mean by manifest necessity? In the Pondexter case, which was a mid-trial mistrial, but in that case they said essentially that if there are any reasonable alternatives to a mistrial, they have to be employed. Because you're forcing the defendant not to mention in this case the state witnesses who are child witnesses. You're forcing the defendant to go through the expense and the anxiety of a second trial where there's not a reasonable certainty or not even a reasonable belief that this jury could not come to a verdict. Well, but here, didn't the foreman of the jury indicate that they were at an impasse and deadlocked? And so how do we overcome the high degree of deference that we have to show the trial court in its decision to declare a mistrial? Let me make two points on that. First of all, the jurors said they were at an impasse. An impasse is not the same as hopelessly deadlocked. And when the judge talked to that juror, the juror foreperson, he actually told the judge that there had been movement back and forth among the jurors. So he didn't say they were deadlocked. He said they were stuck at a certain proportion. So the idea that the jury was hopelessly deadlocked was not even an accurate reading of what the juror was telling her. Secondly, when you're talking about the exercise of judicial discretion in the context of a double jeopardy issue, the judge has to, as some courts have said, the judge has to use scrupulous discretion. Actually, in Pondexter itself, Pondexter spoke of a case from almost 200 years ago, a U.S. Supreme Court case of the United States v. Perez, which did involve a case of jury deadlock. And they said in that case, yeah, a trial judge has the discretion to decide when a jury mistrial should be declared. But that court said the power ought to be used with the greatest caution under urgent circumstances and for very plain and obvious causes. Even the United States majority said that there should not be a mistrial declared in cases of jury deadlock until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceeding. It's impossible to imagine here that the trial judge could have decided that the jury was hopelessly deadlocked without even at a minimum giving them a prim instruction. Well, she did tell them earlier did she not to keep or through her bailiff to keep deliberating. Is that the same thing? No. No, it's not at all. What's the difference? Well, the difference is that a prim instruction tells the jury not only that they should keep deliberating, but specifically tells them that they have a duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. So it's not just a matter of, gee, maybe we think it's a good idea to reconsider. They have a duty to not only reconsider their own opinions, but to consider the opinions of the other jurors. And the judge didn't offer them. If it were just a matter of keep deliberating, there would never be a need for a prim instruction. A prim instruction is what tells the jurors what their obligation is in a particular trial. And I think if you look at the six factors that this court identified in its Andrews case regarding when it's proper, what circumstances should be considered in determining whether a mistrial is properly declared based on jury deadlock, out of all of those six factors, the only one that even possibly favors the state is the jury's collective opinion that it cannot agree. But in this case, as I said, that isn't really an accurate reading of what the foreperson was saying. The foreperson was saying, we have been deliberating back and forth, and we've changed our votes back and forth. So the juror's opinion was, well, right now we're not in agreement, but that didn't foreclose the possibility that with further deliberations the jurors could have come to a verdict. In fact, in Andrews itself, the jury had told the judge that they were deadlocked at 7-5 and that the possibility of a verdict was slim. And even in that case, the court pointed out in that case it was a half-a-day jury trial. There was only one charge. There was only one issue in the case. And even in that case, the judge in that case decided to give the jury a prim instruction. I'm not really sure why in this instance everyone was focused on, let's give them a prim and tell them to come back the next day. I don't know what was magical about it being 4-30. The jurors had not been deliberating that long, and it was still in the early evening, late afternoon. What role, if any, did the judge's earlier communication, ex parte communication, have with respect to her declaring the mistrial? I think it improperly influenced the judge to refuse to give a prim instruction. Why do you say that? Because she tried to justify her refusal to give a prim instruction based on the fact that two hours earlier she had told the jury to keep deliberating and that they still hadn't come to a verdict. But at that time, first of all, she should have really told the parties about that and given them an opportunity at that time to make their positions known. But secondly, as we've discussed, telling a jury to keep deliberating is not the same as giving a prim instruction. Did the defendant object or defense counsel object when he learned that there had been an ex parte communication? Neither side objected, although it is a situation, as it's commonly pointed out, that it's difficult when a judge is the one taking action that is not appropriate for somebody to speak up. But even despite that, if you look at all the other factors here, the length of the jury's deliberations, it was less than five hours after a two-and-a-half-day trial. That's not an excessive period of deliberations. The trial was two-and-a-half days long. Complexity of the issues presented to the jury, there were four separate charges. There were issues on both sides relating to credibility of witnesses and proper communications the judges had. We discussed that. And certainly there couldn't have been any concern about possible exhaustion and coercion of further deliberations might have had. Both sides were asking for the prim instruction. Where did she get the idea that she thought that there would be unhappy jurors back there? I mean, what's that based on, and should we consider that? One, I don't think you should consider. But two, I believe it's her observation that she had heard loud voices coming from the jury room. She didn't go any further than that and explain what she meant. But loud voices is a sign that the jury is still communicating and speaking to each other about the verdict. So I don't know. Certainly if she was concerned that there was any kind of threat of violence or if things were being thrown around the room, I think her bailiff would have intervened at that point. So all I can get out of it is because she heard loud voices, maybe they sounded passionate. I don't know. But there's no indication. I don't know why that would have any impact on whether you should give a prim instruction to a jury or not. Once the trial judge declared the mistrial, didn't defense counsel go ahead and agree to further status dates, a new trial date, or trial date first, then the status date? And wasn't that the equivalent of acquiescing in the mistrial declaration? No, that's exactly what happened in Bagley. And actually, I don't believe he did ask for a new trial date. He asked for a status date. I think it was a prosecutor who asked for a new trial date. He did indicate, well, I probably need to do it a little more. I think his intention was if this is actually going to go to another trial, I'm going to need to do more discovery. A status date for subpoenas is what I think he said. Right, right. But he never answered. No, in Bagley, too, what the standard is, is you're making it clear to the trial judge you wish. And I think in a way it's kind of equivalent to if you say you make a pretrial motion and you lose, and then it comes out at trial and you don't object. You're not waiving that if you then again raise it. So here he's told the judge, my client wants to proceed with this jury. He's selected this jury, took a day to select this jury. We've had all these witnesses, all this evidence, and we want to proceed to trial. Once the judge declares a mistrial, he's done all he can do. And then his next obligation is to file a motion to bar the prosecution on double jeopardy grounds, which is what he did do here. If I can sum up, Your Honors, I don't believe it was proper. It's not proper to foreclose a defendant's right to a verdict from the particular tribunal that he has chosen when there are reasonable alternatives that the judge could have utilized and didn't utilize. There was no manifest necessity, certainly no imperious necessity. It was an abuse of discretion for her to declare the mistrial without exercising any options other than the declaration of a mistrial. So we're asking that you reverse the trial judge's order and that you order that the re-prosecution be barred. Are there any other questions? Thank you. Thank you.  Thank you. Ms. Diaz? Good afternoon, Your Honors. Eileen Diaz on behalf of the people. As counsel laid out, the issue today is whether the trial court abused its discretion in denying defendants' motion to bar re-prosecution on double jeopardy grounds. Before Your Honors can address that issue, Your Honors must first consider the threshold issue, which is whether the trial court abused its discretion in sua sponte declaring a mistrial. As counsel alluded to, defendant is protected by both the U.S. and Illinois Constitution against or constitutions against subsequent or multiple prosecutions for the same offenses. In order to determine whether a defendant has been improperly prosecuted twice for the same offense, this court and the trial court must look at whether, first of all, defense counsel acquiesced or consented to the declaration of the mistrial. And if this court determines that counsel acquiesced or consented to the declaration of a mistrial, it doesn't have to go to the second step, which would be whether there was a manifest necessity to declare a mistrial. It's the people's position that counsel in this case acquiesced to the declaration of the mistrial. If Your Honors would permit me to begin there. That's where I would like to start. Counsel in this case had at the very least two opportunities to object to the declaration of the mistrial. And while the court below did not address counsel's acquiescence or find that counsel acquiesced when it denied defendant's motion to bar re-prosecution, Your Honors are allowed to affirm the judgment below on any grounds that are made clear in the record. Here, when the court first, counsel's first opportunity was presented when the trial court informed the parties that it had received a note, I believe it was at 215, or I apologize, it was before 215. I think it was around 150. It received a note from the jurors indicating that they were at an impasse. The jury did not use the term hopelessly deadlocked. I don't know many lay people who would use hopelessly deadlocked in a note. But at that juncture, counsel was presented with an opportunity. Counsel didn't know about that. That was the ex parte communication. That's the time, at least as I recall the record, when the bailiff informed the court and the court sent, instructed the bailiff to tell the jury to keep deliberating. Counsel didn't know about that. We're not disputing that the first time, counsel did not have an opportunity. And we do acknowledge that the trial court That was the one around 2 o'clock. The one where the second note was around 420, 430, something like that. Oh, 425, the second note. Yes, they finished looking at the video, I think around 2, and then They returned to deliberations at around 215. They were taken into the courtroom at approximately 150 p.m. to watch the 34-minute CAC video. At approximately 215, they returned to the deliberation room. Right, that's when that ex parte communication. Right, shortly thereafter, the trial court communicated with the jury outside of the presence of the parties. We acknowledge that that was improper communication. So that's not an opportunity. That's not an opportunity. When do you say he had an opportunity? The first was at 425 when the court informed the parties that the jury was at a new pass. So that would have been the first opportunity. So what should counsel have done then? Counsel should have, instead of just agreeing with the state's suggestion that a prim be given and then adding an alternative that a recess, that a prim and or a recess be given, counsel should have voiced an objection. And badly, this court found that counsel should do what? Objection to what? Oh, okay. I apologize. When the state opined that the jury's note indicated that it was deadlocked, it's the people's position that upon hearing the word deadlocked, counsel should have at least objected to the state's characterization. Because in the real world, when someone says in a courtroom, it's our opinion that the jury is deadlocked, counsel should at least have an inkling that a mistrial is a possibility. And here, in response to the state's characterization that the note indicated deadlocked, counsel, instead of objecting to any potential for mistrial, simply agreed with the state's suggestion that even though the jury was deadlocked, a prim instruction should be given, and then counsel added that the second viable alternative would have been giving the jury a recess. Excuse me. So what should the objection have been? What should counsel have said at that point? Before counsel knew that the court intended to declare a mistrial, what should the objection have been? At that point, we acknowledge that it's not as strong as Your Honors are presenting it now. I recognize that the objection at that point would not have been as strong or as possible as I initially thought. Counsel wouldn't have been able to. What about the second opportunity? The second opportunity that we submitted is after the trial court brought out the foreperson and addressed the foreperson, the foreperson said that he had asked the jurors whether a recess would have been fruitful, and the answer was no. At that point, when the judge sent the foreperson back to the room to deliberate, or not to deliberate, sent the foreperson away and discussed with the parties whether or not a recess would have been fruitful, at that point an objection would have been appropriate. Counsel did not object. Again, what would he be objecting to? Her observation of what the foreman said? Not her observation, but the fact that after the prosecutor asked for prim and further deliberations and the judge expressed that she was fearful and didn't think that that would be fruitful, either suggestion, counsel should have objected. To what? To what was clear. To giving a prim? Not to giving a prim. Well, that's what was on the table. The state had just asked for a prim. But the judge denied that request. Without input from the defense? No, the defense acquiesced, or not acquiesced, but agreed to the suggestion that a prim should be given and then suggested an alternative that in addition to the prim, the jury should potentially be given a recess. But after the judge expressed her fears, that she was fearful because the noises were getting louder or the jury was getting louder, counsel could have at that point voiced an objection to her denial. To her observation? Not to her observation, but... I don't understand. What would counsel be objecting to? The court hadn't done anything other than say, well, I'm not going to give a prim. Okay, so we... But even though the court had not expressly stated that it was going to declare a mistrial and had not done anything other than say, we reject the prim and we reject the suggestion that the jurors be given a recess given the context of what the foreperson told us, it wasn't an express statement that a mistrial was looming, but when in between the point where the judge sent the foreperson back to the deliberation room and said, bring the jurors back, please, at that point, counsel could have said something. Because... What's he supposed to say? To the extent... Like a preemptory, judge, don't do a mistrial? Honestly. Is that what you're anticipating? Honestly, yes. Okay. But that isn't required under any case law, is it? There isn't any. We've just talked about the cases. There's the first district case that says that maybe there's some magic language, but Bagley is the second district case. Justice Callum was the author. Justice McLaren was part of the panel on that case. We have case law in this district completely contrary to that. So what authority are you relying on? In Camden, we understand it's a little bit distinguishable because Camden requires that an objection... Well, in Camden, the court, the Illinois Supreme Court, found that merely requesting a prune instruction or agreeing that one should be given is not sufficient to indicate that a defendant wants to continue deliberating before a particular jury. In Bagley, the distinction that we see is that counsel forcefully argued his position. When I say, I was unable to tell from reading Bagley what exactly was meant by counsel forcefully arguing his position. But here, counsel didn't argue any position, and the only thing he did was agree with the prosecutor that a prune should be given. And frankly, that's not enough. And we would ask, Your Honors... What about asking to have the jurors come back the next day? Wouldn't that imply that he doesn't want a mistrial declared? Doesn't it indicate that his client would like to have this jury render a verdict? We submit that that's not sufficient, Your Honor. If it can be construed as an indication, given what's at stake, counsel... It would be... We believe that it would be to abandon common sense to say that counsel did not understand that a mistrial was looming at the point when the judge said, I'm going to not give a prune instruction. I don't believe a recess is fruitful. And then she sent the foreperson back and asked the jurors to come back out, and counsel just remained silent. It was clear that... So you're saying he acquiesced? Is that what you're saying? Yes. Okay. But then what case law are you relying on? Camden, where the Supreme Court... Your Honor, so just give me a few seconds. In Camden, the court did look at, and we don't know how practical this is... Well, but there was no objection by defense counsel there, and the juror, he just thanked the jurors, right? In Camden? Right. Right. So that's a different fact. That's distinguishable from the facts here, isn't it? We don't believe so, because we don't think that there was an objection here on the record. We don't believe that counsel acquiesced or agreed with the prosecution's suggestion to give a prim, but did not voice an objection. We understand that there's not much practicality to objecting, or it's our belief that there's not much practicality to objecting once a mistrial has been declared. Having said that, counsel's behavior after the mistrial was declared, agreeing to the December 4th date either set by the prosecutor or the one he suggested for status or subpoenas, that's indicative of his lack of objection, in fact, that he didn't forcefully argue his position, as the attorney did in Batley. Have you ever heard of the term procedural default? Yes. Procedural default can be an objection or a non-objection or a failure to object. It also can be a failure to request a prim instruction. And a procedural default is supposed to be something whereby somebody does something that literally puts the other side in a trick bag, because it means that had they raised the flag, had they asked for a prim instruction, then the trial court could have considered it, the other side could have commented about it, and it would have been covered, and it would have been covered for purposes of perfecting the issue on appeal. It seems like you've been conflating, confusing objection with a procedural default, whereby the attorney failed to do something that he should have done that supposedly puts the state in a trick bag and precludes review by both the trial court and the appellate court. The only problem I'm having with this analysis is that it would appear that this attorney did ask for a prim instruction, did ask the case come back the next day for jury deliberation. So I don't know where you're going with this, because this doesn't fit, or put another way, your concept of what a procedural default or an objection is just doesn't fit the facts in this case. Unless you're going to tell us that there was something else this attorney should have done that they didn't do or he didn't do that would have put both the state in a better position to respond, remediate whatever problem existed, and give the trial court the opportunity to rule thereon. So what other things, other than an objection and the other things that the attorney did do, is that he didn't do? Apparently the only thing that he did that you claim is a procedural default is he didn't say, I want this jury to hear this case, the verdict. Is that your argument? I would characterize it in a different way, but to the extent that my characterization of this is that he needed to do something more forceful. What, talk louder? Make her think that there were loud voices in the courtroom? Potentially. I don't understand what your honors meant or this court meant in badly by forcefully arguing a position. But at the very minimum, given what was at stake, we would submit that counsel needed to object. I have a few more seconds. I have one other question. What about you? No, I'm good. The judge's ex-party communication with the jury violated the defendant's right to be present in person and certainly by his counsel. But didn't that ex-party communication tip the scales in the judge's decision to declare a mistrial rather than give the permanent instruction? Based on what we've read in the record. I mean, the judge did say, so this is the second time I've received information from the jury that they're at an impasse. Did the judge herself indicate that that was a factor in her deciding not to give the permit? I don't know if it was the fact that the jury communicated to the judge that they were having or that he was having difficulty or the fact that she had the improper communication with the jury that arguably tipped the scale. In any event, we would ask your honors to find that if counsel did not consent that there was a high degree of necessity to declare the mistrial and therefore there was no abuse of discretion below. Thank you. Thank you. Ms. Gelnick? I have two very brief points. One is I don't know if it was clear enough, but Camden did not involve a case of jury deadlock. Camden was a mistrial declared in the middle of trial when one juror expressed an inability to be impartial. And the defense attorney, that was a classic example, I think, of acquiescence. The defense attorney was given an opportunity to question the juror, didn't want to question the juror, asked to speak to the prosecutor, came back into court, and didn't ask for any remedy. And the judge declared a mistrial, and he just said thank you. So it's not the same situation we have here. Secondly, I think the court has pointed out to you. Could he have been more forceful in saying thank you? He wasn't at all. He exhibited no force at all, I guess, in Camden. It also, I think, is noteworthy here, too, that the trial judge did not, in fact, tell either party that she was going to declare a mistrial. She just said, I'm declining to exercise either option, and then called the jury out and declared a mistrial. So I'm not sure what more the defense attorney could have done when he said, here's really the only two viable options we have is give him a prim and ask him to come back the next day. Once she had declared a mistrial and excused the jury, I don't know what more he could have said. And before declaring a mistrial, I mean, under JORN, doesn't a trial judge have the obligation to examine or employ all alternatives and wouldn't giving the prim have been an alternative? Certainly. That was, I think, as the defense counsel was correct, that was the only viable option, at least to give that and then possibly direct them to come back the next day. So we would ask, again, that the trial judge's order be reversed. Thank you. Thank you. We'll take the case under advisement. We have one more case on the call. Court is adjourned.